# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00542-CV

**Brushy Creek Enterprises, Inc. and Tahseen Khan, Individually, Appellants**

**v.**

**Heller First Capital Corp., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001926, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this deficiency judgment case, appellants Brushy Creek Enterprises, Inc. and Tahseen Khan (collectively, "Brushy Creek") appeal the district court's summary judgment in favor of appellee Heller First Capital Corp. ("Heller"). In a single issue, Brushy Creek contends that the district court erred in excluding the affidavit and report of Brushy Creek's expert from its summary judgment evidence. Because we conclude that the district court did not err in excluding the affidavit or report, we affirm the district court's judgment.

## BACKGROUND

In 1999, Brushy Creek borrowed $2,000,000 from Heller to purchase real property with improvements in Williamson County, Texas. A written agreement documented the loan and a deed of trust granted Heller a security interest in the property. When Brushy Creek defaulted on the loan in 2006 by failing to make principal and interest payments, Heller notified Brushy

Creek that it intended to foreclose on the property. In response, Brushy Creek hired appraiser Byron B. Hinton, who valued the property at $2,040,000. Brushy Creek sent Hinton's appraisal report to Heller. Heller subsequently sold the pledged property and improvements at a non-judicial foreclosure sale for $1,300,000. The sale left a deficiency on the loan of approximately $650,000, which Heller demanded from Brushy Creek, but Brushy Creek did not pay.

Heller filed this suit in May 2006 to recover the deficiency and its attorney's fees. Brushy Creek denied the deficiency, claimed that the pledged property was sold at foreclosure for less than fair market value, and requested relief under section 51.003 of the property code. *See* Tex. Prop. Code Ann. § 51.003 (West 2007).[1]

Brushy Creek served responses to Heller's requests for disclosure on July 28, 2006, identifying Hinton as its retained testifying expert regarding its claims under section 51.003 of the property code. In response to that designation, Heller served Brushy Creek with a notice of deposition for Hinton on December 19, 2006. The deposition was scheduled to take place on January 24, 2007. Brushy Creek did not file a written objection, motion to quash, or motion for protective order in response to Heller's notice of deposition. At 4:56 p.m. on January 23, 2007, Brushy Creek's attorney faxed a letter to Heller's attorney regarding the deposition scheduled for the next day:

---

[1] Section 51.003 provides that a party against whom a deficiency judgment is sought may request that the court determine the fair market value of the real property as of the date of foreclosure and offset that party's deficiency as appropriate. Tex. Prop. Code Ann. § 51.003 (West 2007). The party requesting relief under section 51.003 must provide competent evidence of the fair market value at the time of sale. *Id.* § 51.003(b).

We have been unable to get a hold [sic] of [Hinton] regarding your deposition notice. Further, my client has not formally retained [Hinton] as a expert in this case, and he is merely a third party expert who will probably have to be subpoenaed in order to provide a deposition. Accordingly, we will not be able to be in attendance tomorrow as we have no control over this witness and I believe he would prefer to be deposed at his office, and will probably have to be subpoenaed for the purposes of the deposition.

Brushy Creek did not produce Hinton for the deposition, nor did Brushy Creek supplement or amend its discovery responses prior to the end of the discovery period.[2]

On January 29, 2007, Heller filed a "Motion to Strike Defendants' Expert Witness Designation and Report," asking the district court to strike Hinton and his report on the grounds that Brushy Creek had "de-designated" Hinton and had failed to produce Hinton for deposition after proper notice. Heller's motion asserted that Brushy Creek had engaged in "delay tactics" at the "eleventh hour" to "forestall[] the timely determination by this court of the deficiency judgment to be awarded to Heller under the terms of the [loan agreement]." Brushy Creek did not respond to Heller's motion and did not appear at the hearing on the motion, which took place on February 13, 2007. In an order dated February 13, 2007, the district court found that Brushy Creek had failed to produce Hinton for deposition, had de-designated Hinton as its expert, and had "unreasonably deprived [Heller] of an opportunity to cross examine [Hinton] and investigate and determine the reliability of the written report of [Hinton]." The district court (1) struck Brushy Creek's designation of Hinton, (2) struck Hinton's expert report, and (3) ordered that Brushy Creek not "utilize the testimony or written report of [Hinton] in connection with this litigation."

---

[2] Brushy Creek does not dispute that the discovery period in this case ended on April 28, 2007.

3

On March 1, 2007, Heller filed a motion for summary judgment on its claim for deficiency, asserting that Brushy Creek's failure to timely designate an expert on the fair market value of the property foreclosed Brushy Creek's right under section 51.003 of the property code to have the district court determine the fair market value of the property. *See* Tex. Prop. Code Ann. § 51.003(c) (if party requesting determination of fair market value fails to produce competent evidence of fair market value, "the sale price at the foreclosure sale shall be used to compute the deficiency"). The parties agreed to set the summary judgment hearing for April 19, 2007.

Brushy Creek timely filed a response to Heller's motion, requesting leave to designate Hinton as its expert and attaching Hinton's affidavit and report as its summary judgment evidence. Brushy Creek, in its response, asserted that Hinton's affidavit and report established that the fair market value of the property at the time of foreclosure was $2,040,000 and that Brushy Creek was entitled to have the district court use that amount to calculate Heller's deficiency judgment, rather than the foreclosure sale price. Brushy Creek did not attach any additional evidence to its response, nor did it offer any additional argument regarding Heller's request for summary judgment. In reply, Heller filed a motion to exclude Brushy Creek's summary judgment evidence on the ground that the district court's February 13, 2007 order prohibited Brushy Creek from using Hinton's testimony or report in the litigation.

At the summary judgment hearing, the district court found that its February 13, 2007 order prohibited Brushy Creek "from utilizing, by affidavit or other testimony, the expert opinion and appraisal of [Hinton]," and granted Heller's motion to strike Hinton's affidavit and report from Brushy Creek's response. The district court then granted summary judgment for Heller on its claims

4

for deficiency judgment and attorney's fees, specifically finding that the foreclosure sale price would be used to determine the deficiency amount.

## DISCUSSION

In its single issue on appeal, Brushy Creek contends that the district court erred in excluding, and thus failing to consider, Hinton's affidavit and report from Brushy Creek's summary judgment response. Because the district court excluded this evidence based on its February 13, 2007 order prohibiting Brushy Creek from using Hinton's testimony or report as evidence in the litigation, we first review the February 13, 2007 order.

### *February 13, 2007 Order*

Brushy Creek asserts that "banning of the use of Mr. Hinton as an expert witness in the summary judgment proceeding amounted to a 'death penalty' sanction" and was improper. Heller argues that because it did not request sanctions or cite to Texas Rule of Civil Procedure 215 ("rule 215") in its motion to strike, the February 13, 2007 order was not a discovery sanction. Heller's motion, however, requested relief for Brushy Creek's discovery misconduct and the relief requested was to prohibit Brushy Creek from introducing designated matters in evidence. This conduct and relief implicate rule 215. *See* Tex. R. Civ. P. 215 (titled "Abuse of Discovery; Sanctions"). The order itself finds that Brushy Creek failed to produce its designated expert, thereby unreasonably depriving Heller of an opportunity to depose Hinton, and prohibits Brushy Creek from using Hinton or his report in the case. And because Brushy Creek's deadline for designating

5

its experts had not yet passed,[3] the February 13, 2007 order could not have been issued under Rule 193.6, which provides that a party who fails to timely designate an expert may not introduce that expert's testimony or report in evidence. *See* Tex. R. Civ. P. 193.6. Based on the nature of the relief requested and granted and the procedural context of the case at the time the order issued, the February 13, 2007 order striking Hinton was in the nature of a discovery sanction. We will review it accordingly.

Trial courts have broad discretion to use discovery sanctions to ensure compliance with the discovery rules and to punish and deter violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). We review a trial court's imposition of discovery sanctions for an abuse of discretion. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether under all the circumstances of the particular case the trial court's action was arbitrary or unreasonable. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). In discovery sanction cases, a trial court's discretion is limited by the requirement of rule 215.2 that the sanctions be "just" and by the parties' constitutional right to due process. Tex. R. Civ. P. 215.2(b)(2);

---

[3] A party not seeking affirmative relief must designate its experts no later than sixty days before the end of the discovery period. Tex. R. Civ. Pro. 195.2(b). Although Brushy Creek sought an offset under section 51.003 of the property code, this is not a request for affirmative relief because a section 51.003 claim for offset depends on Heller's claim for deficiency judgment. *See* Tex. Prop. Code Ann. § 51.003(b) ("Any person against whom such a [deficiency judgment] is sought . . . may request . . . ."). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, *independent of the plaintiff's claims*, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (italics added). Thus, Brushy Creek had until February 28, 2007 to designate its experts.

6

*TransAmerican*, 811 S.W.2d at 918-19. For sanctions to be just, there must be a direct relationship between the offensive conduct and the sanction, and the sanction must not be excessive. *Chrysler Corp.*, 841 S.W.2d at 849.

The sanction here was not a "death penalty" sanction. Even though the district court struck Hinton and his report, the sanction did not prevent Brushy Creek from designating another expert witness or offering other evidence to establish the fair market value of the property. Brushy Creek chose to not designate another expert witness. A death penalty sanction occurs when "the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery." *TransAmerican*, 811 S.W.2d at 918. A sanction limited to striking one specific expert witness who was directly related to the specific conduct at issue and leaving open the option to replace that witness does not equate to a decision on the merits.

Further, the sanction in this case was just and did not impinge on Brushy Creek's due process rights. Brushy Creek's "offensive conduct" was (1) designating Hinton as a retained testifying expert when it had not actually retained Hinton, (2) failing to produce Hinton in deposition after being properly noticed for his deposition, (3) failing to request the appropriate relief under the circumstances—*e.g.*, written objection, motion to quash, or motion for protective order—and (4) notifying Heller at the last minute that it would not produce Hinton. A sanction striking Hinton and his report is directly related to and narrowly tailored to address the offensive conduct listed. Also, Brushy Creek's failure to respond to Heller's motion and failure to appear at the hearing may have indicated to the district court that lesser sanctions would not secure Brushy Creek's compliance or deter similar misconduct in the future. *See Chrysler Corp.*, 841 S.W.2d at 849. As such, the

7

sanction was just.  Also, with regard to due process concerns, Brushy Creek does not dispute, nor is there any evidence in the record to the contrary, that it received Heller's motion to strike, that it had notice of the hearing on that motion, and that it failed to appear at the hearing.  Accordingly, we hold that the district court acted within its discretionary authority in striking Hinton and his report from the case.

### Exclusion of Summary Judgment Evidence

Having determined that the district court's February 13, 2007 order was within its discretion, we next review the district court's decision to exclude Hinton's affidavit and report from Brushy Creek's summary judgment response.  We review a district court's decision to strike summary judgment evidence under an abuse of discretion standard.  *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 270 (Tex. App.—Austin 2002, pet. denied).  A district court may be reversed under this standard only when a reviewing court finds that "the court acted in an unreasonable or arbitrary manner."  *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer*, 701 S.W.2d at 241-42.  Stated another way, a trial court abuses its discretion when it acts without regard for any guiding rules or principles.  *Beaumont Bank, N.A.*, 806 S.W.2d at 226; *Downer*, 701 S.W.2d at 241-42.  We may not reverse for abuse of discretion merely because we disagree with a decision by the trial court, if that decision was within the trial court's discretionary authority.  *Downer*, 701 S.W.2d at 242.

Here, the district court excluded Hinton's affidavit and report based on the court's previous order prohibiting Brushy Creek from using Hinton or his report in the case.  We have already concluded, under a more strenuous standard of review for discovery sanctions, that the

8

district court acted within its discretion in prohibiting Brushy Creek from using Hinton or his report in this litigation. Because the district court was within its discretion striking Hinton in the first place, it was not an abuse of discretion for the district court to abide by its prior ruling and exclude Hinton's affidavit and report in a subsequent hearing.

## CONCLUSION

Because we conclude that the district court did not abuse its discretion in excluding Brushy Creek's expert affidavit and report, we affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 7, 2010

9